

FILED & ENTERED

MAY 26 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:   Weed Cellars, Inc., Debtor. | Case No.: 2:21-bk-18868-ER |
| Elissa D. Miller, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>W Licensing, LLC and Meir Asher,<br><br>Defendants. | Adv. No.: 2:22-ap-01082-ER<br><br>**REPORT AND RECOMMENDATION OF THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, CONTAINING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>**[RELATES TO ADV. DOC. NOS. 26 AND 42]**<br><br>Date:    April 26, 2023<br>Time:    10:00 a.m.<br>Location: Ctrm. 1568<br>           Roybal Federal Building<br>           255 East Temple Street<br>           Los Angeles, CA 90012 |

This Report and Recommendation is submitted by the undersigned Judge of the United States Bankruptcy Court for the Central District of California (the "Court") to the United States District Court for the Central District of California (the "District Court") pursuant to 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9033, based upon the Court's determination that the Court lacks constitutional authority to enter a final judgment with respect to the matters addressed herein.[1] W Licensing, LLC ("W Licensing") and Meir

---

In preparing this Report and Recommendation, the Court considered the following pleadings and papers:
1) Complaint for: (1) Declaratory Relief; (2) Avoidance of Fraudulent Transfer and Recovery for the Estate Pursuant to §§ 548, 550, and 551; and (3) Breach of Contract [Adv. Doc. No. 1] (the "Complaint")
2) Trustee's Notice of Motion and Motion for Partial Summary Judgment [Adv. Doc. No. 26]

    a)   Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Partial Summary Judgment [Adv. Doc. No. 27]
    b)   Declaration of Elissa D. Miller in Support of Trustee's Motion for Partial Summary Judgment [Adv. Doc. No. 28]
    c)   Declaration of Robyn B. Sokol in Support of Trustee's Motion for Partial Summary Judgment [Adv. Doc. No. 29]
    d)   Declaration of Dennette A. Mulvaney in Support of Trustee's Motion for Partial Summary Judgment [Adv. Doc. No. 30]
    e)   Declaration of Sheree Lee in Support of Trustee's Motion for Partial Summary Judgment [Adv. Doc. No. 31]
    f)   Notice of Lodgment of Proposed Partial Summary Judgment on the First Claim for Relief [Adv. Doc. No. 32]
        i)   Notice of Lodgment of Amended Proposed Partial Summary Judgment on the First Claim for Relief [Adv. Doc. No. 55]
    g)   Appendix in Support of Trustee's Motion for Partial Summary Judgment [Adv. Doc. No. 33]
    h)   Errata to Chapter 7 Trustee's Motion for Partial Summary Judgment [Adv. Doc. No. 54]
3)   Notice of Cross-Motion and Cross-Motion of Meir Asher for Summary Judgment [Adv. Doc. No. 42]
    a)   Amended Notice of Cross-Motions of Defendants Meir Asher and W Licensing, LLC for Summary Judgment and of Hearing Thereon [Adv. Doc. No. 51]
4)   Notice of Cross-Motion and Cross-Motion of W Licensing, LLC for Summary Judgment [Adv. Doc. No. 43]
5)   Defendants' Joint Opposition to Chapter 7 Trustee's Motion for Partial Summary Judgment [Adv. Doc. No. 35]
6)   Memorandum of Points and Authorities in Support of (i) Defendants' Opposition to Chapter 7 Trustee's Motion for Partial Summary Judgment; (ii) Meir Asher's Cross-Motion for Summary Judgment; and (iii) W Licensing, LLC's Cross-Motion for Summary Judgment [Adv. Doc. No. 36]
    a)   Declaration of David P. Beitchman (Incorporated By Reference) in Support of: (I) Defendants' Opposition to Chapter 7 Trustee's Motion for Partial Summary Judgment; and (II) Defendants' Respective Motions for Summary Judgment [Adv. Doc. No. 37]
    b)   Declaration of Meir Asher (Incorporated By Reference) in Support of: (I) Defendants' Opposition to Chapter 7 Trustee's Motion for Partial Summary Judgment; and (II) Defendants' Respective Motions for Summary Judgment [Adv. Doc. No. 38]
    c)   Appendix in Support of: (I) Defendants' Opposition to Chapter 7 Trustee's Motion for Partial Summary Judgment; and (II) Defendants' Respective Motions for Summary Judgment [Adv. Doc. No. 39]
    d)   Evidentiary Objections to the Declaration of Sheree Lee [Adv. Doc. No. 40]
    e)   Evidentiary Objections to the Declaration of Denette A. Mulvaney [Adv. Doc. No. 41]
    f)   Defendants' Statement of Genuine Issues Re Chapter 7 Trustee's Motion for Partial Summary Judgment [Adv. Doc. No. 44]
    g)   Defendants' Joint Statement of Uncontroverted Facts and Conclusions of Law and Proposed Summary Judgment [Adv. Doc. No. 45]
    h)   Notice of Lodgment of Proposed Summary Judgment for Meir Asher on the First and Third Claims for Relief in the Complaint [Adv. Doc. No. 46]
    i)   Notice of Lodgment of Proposed Summary Judgment for W Licensing, LLC on the First, Second, and Third Claims for Relief in the Complaint [Adv. Doc. No. 47]
7)   Trustee's Reply to Defendants' Joint Opposition to Chapter 7 Trustee's Motion for Partial Summary Judgment [Adv. Doc. No. 52]
    a)   Trustee's Motion to Strike Certain Pleadings Referenced in the Defendants' Joint Opposition to Chapter 7 Trustee's Motion for Partial Summary Judgment [Adv. Doc. No. 53]
8)   Chapter 7 Trustee's Opposition to Motions for Summary Judgment Filed by W Licensing and Meir Asher [Adv. Doc. No. 62]
    a)   Chapter 7 Trustee's Separate Statement of Genuine Issues in Response to Defendants' Joint Statement of Uncontroverted Facts and Conclusions of Law [Adv. Doc. No. 63]
    b)   Plaintiff's Evidentiary Objections to Declaration of Meir Asher (Incorporated By Reference) in Support of: (I) Defendants' Opposition to Chapter 7 Trustee's Motion for Partial Summary Judgment; and (II) Defendants' Respective Motions for Summary Judgment [Adv. Doc. No. 64]

Asher ("Asher," and together with W Licensing, the "Defendants") have not consented to the entry of final judgment by the Bankruptcy Court.[2] Absent such consent, this Court lacks constitutional authority to enter final judgment because this action involves a fraudulent transfer claim. *Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012).

At the above-captioned date and time, the Court conducted hearings on cross-motions for summary judgment (the "MSJs") filed by the Chapter 7 Trustee (the "Trustee") and the Defendants. At the conclusion of the hearing, the Court took the matter under submission. For the reasons in the Final Recommendation set forth below, the Court recommends that the District Court enter final judgment as follows:

1) On the first claim for relief as to W Licensing, enter declaratory judgment in favor of the Trustee, and against W Licensing, declaring that W Licensing does not possess any interests attaching directly to the Sale Proceeds[3];
2) Dismiss the first claim for relief as to Asher based upon a lack of jurisdiction;
3) On the second claim for relief, enter summary judgment in favor of W Licensing[4];
4) On the third claim for relief, enter summary judgment in favor of W Licensing and Asher; and
5) Find that Asher, but no other party, is entitled to the allowance of reasonable attorneys' fees as costs pursuant to Cal. Civ. Proc. Code §§ 1021 and 1033.5(a)(10), in an amount to be determined by the District Court.

# Final Recommendation

## I. Background
### A. Procedural Background

On November 23, 2021 (the "Petition Date"), Weed Cellars, Inc. (the "Debtor") filed a voluntary Chapter 7 petition. The Debtor is *not* a marijuana dispensary or business. Prior to the Petition Date, the Debtor's business consisted of operating lounges for hire, distributing a line of alcoholic beverages with branding that used variations of names and logos containing the word "Weed," and obtaining intellectual property protection for its Weed-branded alcoholic beverages.

---

    c) Plaintiff's Evidentiary Objections to Declaration of David P. Beitchman (Incorporated By Reference) in Support of: (I) Defendants' Opposition to Chapter 7 Trustee's Motion for Partial Summary Judgment; and (II) Defendants' Respective Motions for Summary Judgment [Adv. Doc. No. 65]

    d) Declaration of Robyn B. Sokol in Support of Chapter 7 Trustee's Opposition to Motions for Summary Judgment Filed by W Licensing and Meir Asher [Adv. Doc. No. 66]

9) Defendants' Motion to Strike Plaintiff's Evidentiary Objections to the Declarations of Meir Asher and David P. Beitchman (Incorporated by Reference) in Support of: (I) Defendants' Opposition to Chapter 7 Trustee's Motion for Partial Summary Judgment; and (II) Defendants' Respective Motions for Summary Judgment [Adv. Doc. No. 67]

10) Defendants' Reply Memorandum in Support of (i) Meir Asher's Cross-Motion for Summary Judgment and (ii) W Licensing, LLC's Cross-Motion for Summary Judgment [Adv. Doc. No. 68]

[2] *See* Answer [Adv. Doc. No. 11] at ¶ 6 ("Further, in accordance with FRBP 7012(b), the defendants do not consent to entry of final orders or judgment by the Bankruptcy Court.").

[3] Capitalized terms not defined in this introductory section are defined in the Final Recommendation.

[4] The second claim for relief is brought only against W Licensing.

Several months prior to the Petition Date, the Debtor and W Licensing, LLC ("W Licensing") executed a *Trademark License Agreement* dated July 1, 2021 [Adv. Doc. No. 33, Ex. E] (the "License Agreement"). Meir Asher ("Asher") and the Debtor each hold a 50% membership interest in W Licensing. Adv. Doc. No. 33, Ex. F, p. 223 (Exhibit to Operating Agreement for W Licensing setting forth the capital contributions and membership interests in the entity).

The License Agreement authorized W Licensing to use the Debtor's Weed-related trademarks to market and sell products bearing those trademarks, except that W Licensing was prohibited from marketing or selling alcoholic or non-alcoholic beverages bearing the trademarks. *See* License Agreement at § 2.2(a)(i) (excluding beverages from the scope of the license granted to W Licensing).

On March 21, 2022, the Court authorized the Chapter 7 Trustee (the "Trustee") to sell the estate's intellectual property assets (the "Assets") to Weed Holdings, LLC ("Weed Holdings") for $725,000. Bankr. Doc. No. 85 (the "Sale Order"), Bankr. Doc. No. 80 (final ruling authorizing the sale, referred to hereinafter as the "Sale Ruling"), and Bankr. Doc. No. 92 (Trustee's report stating that the sale had closed and the estate had received a payment of $725,000). The Assets sold included both the trademarks that had been licensed to W Licensing, as well as the rights to use the trademarks in connection with beverage sales that had been excluded from the scope of the License Agreement. Pursuant to § 363(f)(4), Weed Holdings acquired the Assets free and clear of any liens, claims, interests, or encumbrances asserted by W Licensing, with any such liens, claims, interests, or encumbrances to attach to the proceeds of the sale (the "Sale Proceeds"). In so approving the sale, the Court found that the Trustee had demonstrated the existence of a bona fide dispute as to whether the License Agreement had terminated prior to the Petition Date. Sale Ruling at 5–6. The Court took care to emphasize that it was not making a finding that the License Agreement had terminated; instead, the Court's ruling was limited to a finding that the Trustee had demonstrated the existence of a bona fide dispute regarding the alleged prepetition termination of the License Agreement. *Id.*

In connection with the sale, the Court authorized the Trustee to reject both the License Agreement and an *Operating Agreement for W Licensing LLC* [Adv. Doc. No. 33, Ex. F] (the "Operating Agreement") between the Debtor and Asher. Rejection of the License Agreement and the Operating Agreement was effective as of February 23, 2022, the date of the filing of the Trustee's motion seeking authorization to reject the agreements. *See* Bankr. Doc. No. 86 (the "Rejection Order"). The Court entered the Rejection Order in the form proposed by the Trustee. The Rejection Order did *not* specify a deadline for W Licensing or Asher to file a claim for rejection damages pursuant to Bankruptcy Rule 3002(c)(4).

The deadline for creditors to file proofs of claim in the Debtor's case was May 2, 2022. Bankr. Doc. No. 35. The Clerk of the Court (the "Clerk") gave notice of the claims bar date to W Licensing and Asher on January 29, 2022 using a standard court-approved form of notice. *Id.* The notice of the claims bar date (the "Claims Bar Date Notice") stated that it was issued in accordance with Bankruptcy Rule 3002(c)(5). The Claims Bar Date Notice made no reference to any deadline for the filing of claims arising from the rejection of an executory contract under Bankruptcy Rule 3002(c)(4). W Licensing and Asher have *not* filed either a rejection damages claim or a general unsecured claim against the estate.

On April 7, 2022, the Trustee filed a complaint [Adv. Doc. No. 1] (the "Complaint," and the adversary proceeding commenced by the filing of the Complaint, the "Adversary Proceeding") asserting three claims for relief against W Licensing and Asher (collectively, the "Defendants").

In the first claim for relief, asserted against W Licensing and Asher, the Trustee seeks a "judicial declaration … that the Licensing Agreement is a void and unenforceable illusory contract due to lack of consideration and that neither of the Defendants have any rights against the Debtor or the Debtor's Trademarks thereunder." Complaint at ¶ 56. In support of the first claim for relief, the Trustee alleges that "[n]either the Licensing Agreement nor the Operating Agreement identifies any consideration flowing from W Licensing to the Debtor in exchange for the Debtor's grant of an exclusive worldwide license to use the Debtor's Trademarks for the Licensed Products," resulting in a "failure of consideration that is fatal to the formation of a valid contract …." *Id.* at ¶¶ 50 and 52.

In the second claim for relief, asserted against W Licensing only, the Trustee alleges that the "Debtor received less than a reasonably equivalent value in exchange for the transfer of its interest in the Trademarks under the Licensing Agreement," and that accordingly the transfer is avoidable as constructively fraudulent pursuant to § 548(a)(1)(B). *Id.* at ¶¶ 60 and 62.

In the third claim for relief, asserted against W Licensing and Asher, the Trustee alleges that prior to the Petition Date, W Licensing committed a non-curable breach of the Licensing Agreement by failing to carry the insurance required thereunder. *Id.* at ¶ 67. The Trustee seeks "a determination that the Licensing Agreement was terminated before the Petition Date by its own terms," *id.* at ¶ 72, as well as "actual and compensatory damages" from the alleged breach, *id.* at ¶ 74.

**B. Summary of Papers Filed in Connection with the Motions for Summary Judgment**

The Trustee moves for partial summary adjudication, only as to W Licensing, on the first claim for relief. The Trustee intends to seek dismissal of the balance of the claims in the Complaint if the requested relief is granted. *See* Adv. Doc. No. 62, p. 6 at n. 2. The Trustee argues that she is entitled to entry of summary judgment declaring that W Licensing holds no liens, claims, interests, or encumbrances, or rights to the Sale Proceeds because (1) W Licensing does not hold a security interest in the Assets; (2) W Licensing breached the License Agreement prepetition and therefore has no right to the Sale Proceeds; (3) the License Agreement and Operating Agreement were rejected prior to the sale; and (4) W Licensing failed to timely file a proof of claim.

Defendants seek summary judgment in their favor on all three claims for relief. Defendants argue that the filing of the Complaint was not the proper means for the Trustee to resolve the issue of whether Defendants are entitled to any distribution from the estate. They assert that instead of filing the Complaint, the Trustee should have asked the Court to set a deadline for filing claims for damages arising from the rejection of the License Agreement pursuant to Bankruptcy Rule 3002(c)(4). Defendants further assert that they are entitled to an award of attorneys' fees as the prevailing parties.

The Trustee maintains that summary judgment in favor of Defendants is not appropriate because she requires additional time to conduct the discovery necessary to oppose the Defendants' MSJs. The Trustee states that if the Court does not enter partial summary adjudication against W Licensing, she intends to seek an extension of the March 21, 2023 discovery cutoff deadline. *See* Adv. Doc. No. 62, p. 6 at n. 2. The additional discovery which the Trustee asserts is necessary to oppose the Defendants' MSJs includes (1) obtaining expert testimony regarding the value of the Debtor's trademarks that were licensed to W Licensing, (2) deposing Asher, and (3) obtaining discovery regarding the solvency of the Debtor at the time the

License Agreement became effective. *Id.* at p. 9. Defendants oppose any extension of the discovery cutoff deadline.

## II. Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Civil Rule 56 (made applicable to these proceedings by Bankruptcy Rule 7056). The moving party has the burden of establishing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' only if it might affect the outcome of the case[.]" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Civil Rule 56(e)). The court is "required to view all facts and draw all reasonable inferences in favor of the nonmoving party" when reviewing motions for summary judgment. *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).

### A. Denial of the Defendants' MSJs to Provide the Trustee Additional Time to Conduct Discovery is Not Warranted

Under Civil Rule 56(d), if a party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court may take any of the following actions:

1) defer considering the motion or deny it;
2) allow time to obtain affidavits or declarations or to take discovery; or
3) issue any other appropriate order.

Civil Rule 56(d).

On October 5, 2022, the Court issued a Scheduling Order [Adv. Doc. No. 24] establishing the following deadlines pertaining to discovery:

a) The last day to disclose expert witnesses and expert witness reports is **11/29/2022**.
b) The last day to disclose rebuttal expert witnesses and rebuttal expert witness reports is **12/29/2022**.
c) The last day to complete discovery, including discovery pertaining to expert witnesses, is **3/21/2023**. All discovery motions must also have been heard by this date.

Scheduling Order at ¶ 1.

It was not until March 29, 2023—after the discovery cutoff deadline had elapsed—that the Trustee first asserted that it might be necessary for her to conduct additional discovery. The

Trustee states that limited discovery was conducted to minimize litigation costs. Supplemental Sokol Decl. [Adv. Doc. No. 66] at ¶ 9.

Limiting litigation costs is an important objective that all Chapter 7 Trustees are obligated to consider. However, the need to limit costs should not override the Trustee's other litigation obligations, such as the obligation to take seriously the deadlines established by a Scheduling Order. *See Janick Logging v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994) (stating that deadlines "are to be taken seriously"). Further, a key purpose of enforcing the deadlines fixed by a Scheduling Order is to reduce litigation costs. As stated in the Advisory Committee Notes to Civil Rule 16, "[t]ime limits not only compress the amount of time for litigation, they should also reduce the amount of resources invested in litigation. Litigants are forced to establish priorities and thus do the most important work first." In addition, as the Ninth Circuit has explained, litigation deadlines will only be taken seriously if they are strictly enforced:

> In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence.

*Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1060 (9th Cir. 2005).

Civil Rule 16(b)(4) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the … judge." Civil Rule 16's "good cause" standard "primarily considers the diligence of the party seeking the amendment. The … court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609. As stated in *Johnson*:

> A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril. The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of Johnson's case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.

*Johnson*, 975 F.2d at 610 (9th Cir. 1992) (internal citation and quotation marks omitted).

The deadline for the Trustee to disclose expert witnesses to testify regarding the valuation of the trademarks licensed under the Licensing Agreement was November 29, 2022. The Trustee waited until approximately four months after this deadline had expired to assert that an extension was necessary. The Trustee has not shown "good cause" for an extension of the Scheduling Order's deadlines pertaining to discovery. Denial of the Defendants' MSJs on the ground that the Trustee should be provided additional time to conduct discovery is not warranted.
//

**B. Material Facts Not Subject to Genuine Dispute**

Having reviewed the MSJs filed by the Trustee and the Defendants, the evidence and declarations filed in support of the MSJs, the opposition and reply papers, and the pleadings on file, the Court finds that there is no genuine dispute as to the following material facts.[5]

The Debtor and W Licensing executed the License Agreement in August 2021.[6] The License Agreement contains the following integration clause: "This Agreement, together with all Schedules and any other documents incorporated herein by reference, constitutes the sole and entire agreement of the Parties to the Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter." License Agreement at § 15.6.

Among the documents incorporated by reference into the License Agreement is an *Operating Agreement for W Licensing, LLC* [Adv. Doc. No. 33, Ex. F] (the "Operating Agreement," and together with the License Agreement, the "Agreements"). *See* License Agreement at § 8.1 ("The terms of the Operating Agreement are expressly incorporated herein."). Asher and the Debtor each hold a 50% interest in W Licensing. *See* Operating Agreement at Ex. A; Preamble to License Agreement ("Whereas, Licensor [the Debtor] formed Licensee [W Licensing] with the Manager of Licensee, Meir Asher, wherein Licensor and Meir Asher each own equal 50% membership interests in Licensee").

The License Agreement authorized W Licensing to use the Debtor's Weed-related trademarks to market and sell products bearing those trademarks, except that W License was prohibited from marketing or selling alcoholic or non-alcoholic beverages bearing the trademarks. *See* License Agreement at § 2.2(a)(i) (excluding beverages from the scope of the license granted to W Licensing).

The License Agreement contains an unusual definition of the term "royalty." Rather than defining "royalty" as a fixed percentage of sales, the License Agreement defines "royalty" as "[t]he Parties['] respective rights and duties under the [Operating Agreement], and this Agreement …." License Agreement at § 8.2. Under the Operating Agreement, the Debtor was entitled to receive 50% of the "Net Cash Flow" generated from W Licensing's sale of Weed-branded merchandise. *See* Operating Agreement at § 5.3(a) ("Within 90 days after the end of each Fiscal Year, the Manager shall determine the amount of Net Cash Flow, if any, available for distribution to Common Members."). Therefore, the "royalty" that the Debtor was entitled to receive was its 50% share of the profits generated by W Licensing, not a fixed percentage of W Licensing's sales.[7]

Asher's obligations under the License Agreement (as set forth in the Operating Agreement, which the License Agreement incorporates by reference) included providing "[p]roduct license

---

[5] The facts set forth in Section I.A., "Procedural Background," are also incorporated herein as material facts not subject to genuine dispute.

[6] Although the License Agreement is dated July 1, 2021, it was not fully executed until sometime in August 2021. The exact date upon which the License Agreement became fully executed is not clear from the record. *See* Beitchman Decl. [Adv. Doc. No. 37] at ¶ 34 ("I believe the first I received completed execution copies [of the License Agreement] was on or around August 20, 2021"). W Licensing commenced conducting business on July 3, 2021, before the License Agreement had been fully executed. Asher Decl. [Adv. Doc. No. 38] at ¶ 6.

[7] W Licensing and Meir Asher present the testimony of their attorney David Beitchman, which sets forth the reasons for the unusual structure of the License Agreement. *See* Beitchman Decl. [Adv. Doc. No. 37] at ¶¶ 23–26. The Trustee objects to this testimony as hearsay and improper expert opinion by a lay witness. The Court finds that the specific reasons for the structure of the License Agreement are not relevant to the MSJs, and declines to consider the testimony on that ground.

related services including developing, sourcing, manufacturing and sales of licensed products …." Operating Agreement at Ex. A. In furtherance of these obligations, Asher invested more than $600,000 in W Licensing. Asher Decl. [Adv. Doc. No. 38] at ¶ 10. Asher was not entitled to receive a salary for work performed in his role as a 50% member of W Licensing; instead, his compensation consisted of the right to receive a 50% share of W Licensing's profits. *See* Operating Agreement at § 3.1(H) ("A Manager who is also a Member ('Manager-Member') shall not be entitled to a guaranteed payment for services or capital nor other remuneration for services without unanimous consent from the Members. In the event a Manager-Member receives a salary, or any other form of compensation other than a dividend/distribution, from Company, then that salary and/or compensation shall be included in the calculation of Net Profits and Net Losses, and shall be deducted from the distribution of the Manager-Member's dividend as already received.").

The License Agreement required W Licensing to continuously maintain general liability insurance. License Agreement at § 11.3. The License Agreement authorized the Debtor to terminate the agreement if W Licensing failed to timely cure any breach of the License Agreement:

> Licensor [the Debtor] shall have the right to terminate this Agreement immediately by giving written notice to Licensee [W Licensing] if … Licensee breaches this Agreement (other than failure to pay any amounts due under this Agreement) and (if such breach is curable) fails to cure such breach within 14 days of being notified in writing to do so.

License Agreement at ¶ 13.3(c).

On March 1, 2022, the Trustee sent W Licensing a letter demanding that W Licensing cure various alleged breaches of the License Agreement (the "Demand Letter") [Adv. Doc. No. 33, Ex. G]. The Demand Letter alleged that W Licensing had breached the License Agreement by failing to comply with various obligations thereunder. The Demand Letter stated that the Trustee intended to terminate the License Agreement if the alleged breaches were not timely cured. *See* Demand Letter at p. 1 ("[The Trustee] hereby provides notice of the Trustee's intent to terminate the License Agreement for Licensee's failure to provide the year end statement required by Paragraph 8.3 within 30 days of the end of calendar year 2021. Failure to cure this breach within 14 days of the date of this Notice shall result in termination of the Licensing Agreement.").

On March 21, 2022, the Court authorized the Trustee to sell the Assets to Weed Holdings for $725,000, free and clear of any liens, claims, interests, or encumbrances asserted by W Licensing, with any such liens, claims, interests, or encumbrances to attach to the Sale Proceeds. The Court found that a sale free and clear under § 363(f)(4) was appropriate because the Trustee had demonstrated the existence of a bona fide dispute as to whether the License Agreement had terminated prior to the Petition Date. Sale Ruling at 5–6. The Court emphasized that it was not making a finding that the License Agreement had terminated; instead, the Court's ruling was limited to a finding that the Trustee had demonstrated the existence of a bona fide dispute regarding the alleged prepetition termination of the License Agreement. *Id.*
//

**C. The Trustee is Entitled to a Declaratory Judgment that W Licensing Does Not Possess Any Interests Attaching Directly to the Sale Proceeds**

The Sale Order provided that any interests arising from the License Agreement that W Licensing may have in the Assets would attach to the Sale Proceeds:

> It is further ordered that the Court has found that a bona fide dispute exists with respect to the asserted interests of W Licensing, LLC arising from the License Agreement between W Licensing LLC and the Debtor so the Sale of the Assets is approved free and clear of all liens, interests and encumbrances, if any, W Licensing, LLC may hold pursuant to 11 U.S.C. § 363(f)(4) with any such liens, interests and encumbrances of W Licensing, LLC, to attach to the proceeds from the sale of the trademarks listed in the Debtor's schedules and Schedules 1 and 2 ….

Sale Order at p. 3.

Absent this provision, it would not have been possible for the Court to approve the sale of the Assets free and clear of the interest in the Assets asserted by W Licensing. The Trustee filed the Complaint to resolve the issues of (1) whether the License Agreement provides W Licensing any interest capable of directly attaching to the Sale Proceeds and (2) if so, the extent to which the Sale Proceeds are encumbered by any such interest. The Trustee cannot commence distributing the Sale Proceeds to creditors without first obtaining a determination of whether and to what extent the Sale Proceeds are encumbered by the interests of W Licensing, if any.

W Licensing seeks summary judgment in its favor on the Trustee's first claim for relief for a declaration that the License Agreement does not provide W Licensing with any interest in the Sale Proceeds. Entry of summary judgment in W Licensing's favor would imply that W Licensing *does* have an interest in the Sale Proceeds arising from the License Agreement. However, W Licensing has repeatedly taken that position that it is impossible to calculate the value of the interest it asserts in the Sale Proceeds. *See* Adv. Doc. No. 36 at p. 12 ("Because the Trustee made no effort to establish a distinct, separate value for the trademarks licensed to W Licensing included in the asset sale, it is impossible to determine a value for those trademarks at the time of sale. Simply put, an interest in certain discrete assets, commingled and sold with other assets cannot attach to the sale proceeds of those discrete assets absent a segregation of the sale proceeds for those discrete assets."); *see also* Adv. Doc. No. 68 at p. 12 ("The only potential 'claim' that could exist against the Sale Proceeds would be a lien or encumbrances, neither of which W Licensing ever had…. The 'sale proceeds' related to the proceeds *from the sale of the debtor's assets*, not simply the trademarks the debtor licensed to W Licensing. There was no segregation of sale proceeds as to those trademarks; there is no means of differentiating out what portion of the sale proceeds can be ascribed to the W Licensing trademarks") (emphasis in original).

//

W Licensing maintains that the proper means of resolving the question of whether it is entitled to any distribution from the estate is through the claims objection process. According to W Licensing:

> The Trustee has turned the claims objection process inside out. The proper means for addressing damage claims in accordance with FRBP 3002(c)(4) is to seek a bar date specifically for those claims. The Trustee has not sought such a bar date. The May 2, 2022 general claims bar date … was established on January 27, 2022, nearly two months before the Trustee rejected all executory contracts. Seven days before the Court established that general claims bar date, it entered an order extending until April 22, 2022 the deadline for the trustee to assume or reject executory contracts…. To the extent the May 2, 2022 general claims bar date applies, the deadline expired and W Licensing did not file a claim. The Trustee could have objected to any claim W Licensing filed on or before that deadline. Instead, she chose to initiate a groundless adversary proceeding against not only W Licensing, but its managing member on April 7, 2022, 25 days before the so-called May 2, 2022 bar date. The Trustee cannot prospectively rely on that bar date and launch litigation against W Licensing and Meir Asher for a judicial determination neither has a right to the sale proceeds.

Adv. Doc. No. 36 at p. 21.

The issue of whether W Licensing possesses an interest capable of directly attaching to the Sale Proceeds must be resolved, because until the issue is resolved, the Trustee cannot distribute the Sale Proceeds to creditors. The Court finds that W Licensing has waived its right to assert that the License Agreement provides it with an interest that directly attaches to the Sale Proceeds.

"Waiver is the voluntary relinquishment of a known right or conduct such as to warrant an inference to that effect. It implies knowledge of all material facts and of one's rights, together with a willingness to refrain from enforcing those rights." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1119 (9th Cir. 2009). Waiver also occurs when a "party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 938 (9th Cir. 2017).

W Licensing states that "[t]he only potential 'claim' that could exist against the Sale Proceeds would be a lien or encumbrances, neither of which W Licensing ever had …." Adv. Doc. No. 68 at p. 12. W Licensing also states that interests arising from the License Agreement "cannot attach to the [S]ale [P]roceeds" because "it is impossible to determine" the value of any such interests. Adv. Doc. No. 36 at p. 12. These statements constitute a waiver of W Licensing's right to assert that it possesses an interest directly attaching to the Sale Proceeds under the License Agreement.

Although W Licensing has waived its right to assert that the License Agreement provides it with an interest that directly attaches to the Sale Proceeds, W Licensing still has the right to file a claim for damages arising from the Trustee's rejection of the License Agreement and the Operating Agreement. There is no merit to the Trustee's argument that the May 2, 2022 deadline set forth in the Claims Bar Date Notice applies to claims arising from the rejection of an executory contract under Bankruptcy Rule 3002(c)(4). The Claims Bar Date Notice made no reference to any deadline for filing a rejection damages claim under Bankruptcy Rule 3002(c)(4).

Instead, the Claims Bar Date Notice stated that it was issued in accordance with Bankruptcy Rule 3002(c)(5).

As noted above, the Rejection Order, which the Court entered in the form proposed by the Trustee, did *not* specify a deadline for filing a rejection damages claim. As a matter of routine practice, parties who obtain authorization to reject an executory contract include language in the proposed rejection order fixing a deadline for filing a claim for rejection damages. *See, e.g.*, Case No. 2:18-bk-20151-ER, Doc. No. 5469 (order approving stipulation authorizing the rejection of an executory contract that also fixed the deadline for filing a claim for rejection damages). Here, the Trustee neglected to include this routine language in the Rejection Order. The Court cannot rescue the Trustee from the consequences of this omission by artificially expanding the scope of the Claims Bar Date Notice so that it also applies to rejection damages claims.

The Court will fix **June 30, 2023** as the deadline for parties to file claims arising from the rejection of the License Agreement and the Operating Agreement. To the extent that any claim arising from the rejection of such agreements is timely filed, it will be resolved through the claims allowance/disallowance process.[8]

Since W Licensing has waived its right to assert an interest that directly attaches to the Sale Proceeds, and because any claims that W Licensing may have against the estate will be addressed through the claims allowance process, entry of a declaratory judgment that W Licensing possesses no interest under the License Agreement capable of attaching directly to the Sale Proceeds is appropriate.

The finding that W Licensing has waived its right to assert an interest that directly attaches to the Sale Proceeds does not moot the Trustee's request for entry of declaratory judgment in her favor. Entry of a declaratory judgment is appropriate only in the case of an actual, as opposed to hypothetical, controversy:

> The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To fall within the Act's ambit, the "case of actual controversy" must be "'definite and concrete, touching the legal relations of parties having adverse legal interests,' ... 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"

*In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1219–20 (N.D. Cal. 2014) (internal citation omitted).

As discussed above, in opposing the Trustee's MSJ, W Licensing states that it does not possess an interest that attaches directly to the Sale Proceeds. However, W Licensing opposed the Trustee's motion to sell the Assets on the ground that the sale would divest W Licensing of rights in the Assets it had been granted under the License Agreement, and that there was no legal basis for such divestiture. In overruling W Licensing's opposition and approving the Sale, the Court found that any rights in the Assets granted to W Licensing under the License Agreement

---

[8] Entry of the order fixing the deadline for filing rejection damages claims falls within the Court's core jurisdiction, and will occur regardless of what action the District Court takes on this Report and Recommendation. The discussion regarding the rejection damages bar date is included herein to provide necessary context for the Court's recommendation with respect to the first claim for relief.

would attach directly to the Sale Proceeds. Absent W Licensing's prior opposition to the sale, the Court would not have ordered that the interest asserted by W Licensing would attach to the Sale Proceeds, and the Sale Proceeds would not now be clouded by a potential encumbrance in favor of W Licensing. Under these circumstances, the controversy between the Trustee and W Licensing is sufficiently "definite and concrete" to warrant the entry of declaratory judgment in favor of the Trustee, notwithstanding the fact that W Licensing now takes the position that it holds no interest capable of attaching directly to the Sale Proceeds.

The recommendation that the District Court enter declaratory judgment in favor of the Trustee is based only upon the Court's view that W Licensing has waived its rights. The Court does not believe that the Trustee has shown she is entitled to a declaratory judgment based on any of the other theories asserted in the Complaint. For example, the Trustee has not demonstrated either that (1) the License Agreement is an unenforceable illusory contract due to lack of consideration or that (2) the License Agreement terminated prepetition. To the contrary, the License Agreement *did* provide the Debtor consideration for the extension of a license to W Licensing by giving the Debtor a right to 50% of the profits generated from W Licensing's sale of merchandise bearing the trademarks. Nor has the Trustee shown that the License Agreement terminated prior to the Petition Date. The Trustee first threatened to terminate the License Agreement in the Demand Letter sent on March 1, 2022, several months *subsequent* to the Petition Date. The Trustee has not identified any language in the License Agreement which would authorize retroactive termination.

### D. The Trustee's Claim for Declaratory Judgment as to Asher is Dismissed for Lack of Jurisdiction

At oral argument, Asher's counsel stated that there were no circumstances under which Asher, in his capacity as the managing member of W Licensing, could assert any claim or interest of any kind as to any assets of the estate.[9] Counsel explained that as a matter of law, it would be inappropriate for Asher to assert any such claim, because to do so would be to usurp a corporate opportunity belonging to W Licensing.[10]

The Trustee's first claim for relief seeks a declaration that "neither of the Defendants have any rights against the Debtor or the Debtor's Trademarks [under the License Agreement]." Complaint [Adv. Doc. No. 1], Prayer for Relief at ¶ 1. As discussed in Section II.C., above, a court should enter declaratory judgment only "[i]n a case of actual controversy," 28 U.S.C. § 2201(a). To meet this requirement, it is necessary "that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 771, 166 L. Ed. 2d 604 (2007) (internal citation omitted). Courts lack subject matter jurisdiction to adjudicate disputes that do not satisfy these criteria. *Id.* at 129–137.

"Subject matter jurisdiction can never be forfeited or waived, and federal courts have a continuing, independent obligation to determine whether subject matter jurisdiction exists." *Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013). Claims over which the court lacks subject matter jurisdiction must be dismissed. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 1244, 163 L. Ed. 2d 1097 (2006).

---

[9] Oral argument at timestamp 10:10 (audio on file with the Clerk of the Court).
[10] *Id.*

It was W Licensing, not Asher, that opposed the Trustee's motion to sell the Assets and asserted an interest in the Sale Proceeds. Papers filed by W Licensing in opposition to the sale were supported by declarations from Asher, but at no point did Asher assert a claim against the Sale Proceeds or estate assets. Asher's counsel made it clear at oral argument that Asher was not asserting a claim against the Sale Proceeds or any other estate assets. Asher has not filed a proof of claim against the estate; the deadline to do so expired on May 2, 2022. Bankr. Doc. No. 35.

Because Asher has not asserted a claim against the Debtor or its assets, there is no "real and substantial" dispute between Asher and the Trustee. There being no "case of actual controversy," 28 U.S.C. § 2201(a), the Court lacks subject matter jurisdiction as to the claim for declaratory judgment against Asher, and is therefore required to dismiss the claim.

**E. W Licensing is Entitled to the Entry of Summary Judgment in its Favor on the Trustee's Second Claim for Relief Under § 548(a)(1)(B)**

Under § 548(a)(1)(B), the Trustee may avoid a transfer as constructively fraudulent if the debtor "received less than a reasonably equivalent value in exchange for such transfer" and certain other conditions are satisfied.

In exchange for the transfers effectuated by the License Agreement, the Debtor received the right to 50% of the profits generated by W Licensing from the sale of merchandise bearing the Debtor's trademarks. Aside from the grant of the license, the Debtor had no obligation to assist W Licensing in producing or marketing the products in order to obtain its 50% profit share. Under the License Agreement and Operating Agreement, Asher had the obligation to develop, advertise, and market the products. Asher invested more than $600,000 in furtherance of this obligation. Asher did not receive a salary for this work; his compensation consisted solely of the right to receive his 50% share of W Licensing's profits.

The Court finds that there is no genuine dispute that the Debtor received reasonably equivalent value in exchange for the transfers made under the License Agreement. Beitchman, an intellectual property attorney, testifies that the License Agreement "was a generous arrangement for the debtor because it would be contributing nothing to the venture beyond licensing its trademark," and "[a]ll of the responsibility for developing, sourcing, and manufacturing new product lines, obtaining and operating an office space, as well as [the] handling of all administrative tasks associated with the new venture and any necessary cash expenditures would be on Meir Asher's shoulders." Beitchman Decl. at ¶ 25.

The Trustee has failed to submit any evidence controverting Beitchman's testimony. Further, as discussed in Section II.A., above, the Trustee lacks the ability to submit any such evidence, because she failed to disclose an expert witness by the November 29, 2022 deadline, and she has not shown good cause for an extension of that deadline.

In an attempt to create a genuine dispute as to the issue of reasonably equivalent value, the Trustee contends that she could establish the value of the trademarks at trial even without the assistance of an expert witness. In the face of uncontroverted evidence showing that the Debtor did in fact receive reasonably equivalent value for the transfers, the Trustee's contention that she could in the future produce contrary evidence is not sufficient to defeat W Licensing's entitlement to summary judgment. Within the context of a motion for summary judgment, a party asserting that a fact is genuinely disputed must cite "to particular materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials …." Civil Rule 56(c)(1)(A). The Trustee cannot create a genuine

dispute merely by postulating that she has the ability to produce sufficient evidence in the future. To create a genuine dispute, the Trustee was required to submit at least *some* evidence controverting Beitchman's testimony.

The Supreme Court has held that an affidavit containing conclusory allegations not supported by specific facts is not sufficient to defeat entry of summary judgment:

> The object of this provision [Civil Rule 56(c)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit…. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

The Ninth Circuit has similarly held that an affidavit containing only vague assertions cannot defeat entry of summary judgment. In *Sullivan v. Dollar Tree Stores*, 623 F.3d 770, 779 (9th Cir. 2010), the parties disputed whether Dollar Tree was a "successor in interest" to Factory 2-U under the Family and Medical Leave Act of 1993. *Sullivan*, 623 F.3d at 770. Critical to adjudication of the successor in interest issue was a finding as to how many personnel employed at Factory 2-U had continued to work for Dollar Tree. The court held that Plaintiff's testimony that "[m]ost of the same personnel continued to work when Dollar Tree took Factory 2-U over at my store" was too vague to create a genuine dispute as to a material fact, where Dollar Tree had provided detailed factual assertions about which employees it hired and for what purposes. *Id.* at 779.

Here, the Trustee has not submitted any type of affidavit at all (much less a vague and conclusory affidavit) refuting Beitchman's testimony that the Debtor received reasonably equivalent value for the transfer of the trademarks. Like the parties against whom summary judgment was entered in *Lujan* and *Sullivan*, the Trustee accordingly has failed to show the existence of a genuine dispute as to the issue of reasonably equivalent value. Therefore, W Licensing is entitled to summary judgment in its favor on the second claim for relief.[11]

### F. W Licensing and Asher Are Entitled to the Entry of Summary Judgment in Their Favor on the Trustee's Third Claim for Relief for Breach of Contract

In the third claim for relief, the Trustee alleges that prior to the Petition Date, Defendants committed a non-curable breach of the License Agreement by failing to maintain the insurance required thereunder. Complaint at ¶ 67. The Trustee seeks "a determination that the Licensing Agreement was terminated before the Petition Date by its own terms," *id.* at ¶ 72, as well as "actual and compensatory damages" from the alleged breach, *id.* at ¶ 74.

It was not until March 1, 2022, several months subsequent to the Petition Date, that the Trustee sent the Defendants the Demand Letter, which alleged that Defendants had breached the License Agreement. Notably, the Demand Letter did *not* allege that the License Agreement had terminated prior to the Petition Date. Instead, in the Demand Letter, the Trustee threatened to terminate the License Agreement if certain alleged breaches were not timely cured. *See* Demand Letter at p. 1 ("[The Trustee] hereby provides notice of the Trustee's intent to terminate the License Agreement for Licensee's failure to provide the year end statement required by

---

[11] The second claim for relief is asserted against W Licensing only.

Paragraph 8.3 within 30 days of the end of calendar year 2021. Failure to cure this breach within 14 days of the date of this Notice shall result in termination of the Licensing Agreement.").

The Trustee has failed to identify any language in the License Agreement establishing that it could be terminated retroactively. In fact, the idea that the License Agreement could be retroactively terminated is contrary to the agreement's plain language. Under § 13.3, if W Licensing fails to meet certain conditions, the Debtor is authorized "to terminate this Agreement immediately by giving written notice" to W Licensing. But there is nothing within § 13.3 that states that the giving of such written notice could result in the retroactive termination of the License Agreement. Reading § 13.3 to authorize retroactive termination would make it difficult to give effect to the License Agreement's other terms. For example, § 14 of the License Agreement delineates various "post-termination rights and obligations." Reading the License Agreement to authorize retroactive termination would render § 14 nonsensical.[12]

Consequently, as a matter of law, Defendants are entitled to the entry of summary judgment in their favor on the third claim for relief.

**G. Attorneys' Fees**

The License Agreement contains the following attorneys' fees clause:

> In the event that any action, suit, or other legal or administrative proceeding is instituted or commenced by either Party hereto against the other Party arising out of or related to this Agreement, the prevailing Party shall be entitled to recovery its reasonable attorneys' fees and costs from the non-prevailing Party.

License Agreement at § 15.13.

Defendants contend that they are entitled to attorneys' fees under License Agreement's fee provision. In the papers filed in connection with the MSJs, the Trustee has not argued that she is entitled to attorneys' fees; however, the Trustee does seek attorneys' fees in the Complaint. Therefore, the Court finds it appropriate to address the extent, if any, to which both the Trustee and the Defendants are entitled to attorneys' fees.

"No general right to attorney fees exists under the Bankruptcy Code. However, a prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." *Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). The applicable provisions of California law governing the award of attorneys' fees are Cal. Civ. Code § 1717(a) and Cal. Code Civ. Proc. § 1021.

//

---

[12] It is true, as the Trustee notes, that the Sale Ruling found that prior to the Petition Date, W Licensing had breached the License Agreement by failing to maintain the requisite insurance during certain time periods. However, the Sale Ruling made abundantly clear that the Court was not making any finding regarding whether that prepetition breached had terminated the License Agreement. *See* Sale Ruling [Bankr. Doc. No. 80] at p. 5 ("The Court does not find that the Trustee has shown that the License Agreement has terminated; instead, the Court's finding is that a bona fide dispute exists as to whether the License Agreement has terminated").

*1. Cal. Civ. Code § 1717(a)*

Cal. Civ. Code § 1717(a) provides in relevant part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

To obtain fees pursuant to Cal. Civ. Code § 1717(a), three conditions must be met:

> First, the action in which the fees are incurred must be an action "on a contract," a phrase that is liberally construed. Second, the contract must contain a provision stating that attorney's fees incurred to enforce the contract shall be awarded either to one of the parties or to the prevailing party. And third, the party seeking fees must be the party who "prevail[ed] on the contract," meaning (with exceptions not relevant here) "the party who recovered a greater relief in the action on the contract."

*Penrod v. AmeriCredit Fin. Svcs., Inc. (In re Penrod)*, 802 F.3d 1084, 1087–88 (9th Cir. 2015) (internal citations omitted).

Under California law, "an action is 'on a contract' when a party seeks to enforce, or avoid enforcement of, the provisions of the contract." *Penrod*, 802 F.3d at 1087. A party prevails in an action "on a contract" if the party defeats enforcement of one of the contract's terms, even if the party defeats enforcement solely on the basis of federal bankruptcy law. *Id.* at 1088–89. In *Penrod*, a lender succeeded in enforcing its entitlement to payments under an installment sales contract by defeating a provision in a debtor's Chapter 13 plan which would have bifurcated the lender's entitlement to payments into secured and unsecured claims. *Id.* at 1087–88. The *Penrod* court held that the lender's objection to the Chapter 13 plan was an "action on a contract," because the objection enabled the lender to obtain the full amount of the payments it was owed under the installment contract. *Id.* at 1088–90.

The purpose of the License Agreement was to permit W Licensing to generate revenue from selling products bearing the Debtor's Weed-related trademarks. Asher, as the 50% owner of W Licensing, would benefit to the extent that the License Agreement enabled W Licensing to generate profits. W Licensing's ability to exploit those trademarks was cut off when the Assets were sold free and clear of any interests that W Licensing may have possessed in those Assets. Since W Licensing's rights to exploit the trademarks were cut off by the Sale Order, the instant litigation does not involve the enforcement of the License Agreement's terms. Therefore, the litigation does not constitute an action "on a contract" for purposes of Cal. Civ. Code § 1717(a).

Because the litigation falls outside the scope of Cal. Civ. Code § 1717(a), it is not necessary for the Court to make a determination regarding the prevailing party, since the prevailing party or parties would not be entitled to attorneys' fees in any event.

*2. Cal. Civ. Proc. Code § 1021*

Cal. Civ. Proc. Code § 1021 provides that "parties to actions or proceedings are entitled to their costs." As set forth in Cal. Civ. Proc. Code § 1033.5(a)(10), attorneys' fees are allowable to the prevailing party as costs when authorized by "contract, statute, [or] law." Fees may be

recoverable under Cal. Civ. Proc. Code § 1021 even if not recoverable under Cal. Civ. Code § 1717(a). *3250 Wilshire Boulevard Bldg. v. W.R. Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993); *see also Taburaza v. Zarate (In re Zarate)*, 567 B.R. 176, 182 (Bankr. N.D. Cal. 2017) ("Section 1021 allows the parties to agree that the prevailing party in litigation may recover attorney's fees, whether the litigation sounds in contract or in tort."). Because of the fee provision set forth in § 15.13 of the License Agreement, the instant case presents a situation where fees may potentially be allowable as costs to the prevailing party or parties.

For purposes of Cal. Civ. Proc. Code § 1021, a "prevailing party" is defined as follows[13]:

> "Prevailing party" includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the "prevailing party" shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed, may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034.

Cal. Civ. Proc. Code § 1032.

*a. Attorneys' Fees Incurred in Connection with the Trustee's Claims Against W Licensing*

For the reasons discussed above, the Court recommends that the District Court enter declaratory judgment in favor of the Trustee and against W Licensing on the Trustee's first claim for relief, but enter summary judgment in favor of W Licensing and against the Trustee on the Trustee's second and third claims for relief.

In *Marina Pacifica Homeowners Assn. v. S. California Fin. Corp.*, 20 Cal. App. 5th 191, 209, 228 Cal. Rptr. 3d 799, 812 (Cal. Ct. App. 2018), the California Court of Appeal explained the allocation of costs—which may in appropriate circumstances include attorneys' fees—where, as here, neither party fully prevails in the action, and judgment is entered in favor of one party on certain claims and in favor of the other party on other claims. The *Marina Pacifica* court stated that such a situation "is a textbook case for the trial court's exercise of discretion to 'allow costs or not,' because the statute expressly allows a court to do so '[i]f any party recovers other than monetary relief and in situations other than as specified[.]'" *Id.* The court affirmed the trial court's decision to require each party to bear its own costs.

Here, it is appropriate to require the Trustee and W Licensing to bear their own costs. No monetary relief has been awarded in this action, and the Court's recommendation is that judgment be entered in favor of the Trustee on the first claim for relief but in favor of W Licensing on the second and third claims for relief.

//

---

[13] Notably, the definition of "prevailing party" for purposes of Cal. Civ. Proc. Code § 1032 is *not* the same as the definition of "prevailing party" for purposes of Cal. Civ. Code § 1717(a). "The definition of 'prevailing party' in [Cal. Civ. Proc. Code § 1032] is particular to that statute and does not necessarily apply to attorney fee statutes or other statutes that use the prevailing party concept." *DeSaulles v. Cmty. Hosp. of Monterey Peninsula*, 62 Cal. 4th 1140, 1147, 370 P.3d 996, 1000 (Cal. 2016).

*b. Attorneys' Fees Incurred in Connection with the Trustee's Claims Against Asher*

For the reasons discussed above, the Court recommends that the District Court (1) dismiss the first claim for relief against Asher and (2) enter summary judgment in favor of Asher on the third claim for relief.[14]

Asher qualifies as the "prevailing party" because he is "a defendant in whose favor a dismissal is entered" as well as "a defendant as against those plaintiffs who do not recover any relief against that defendant," Cal. Civ. Proc. Code § 1032.

The more difficult question is whether Asher's attorneys' fees should be allowed as costs. Although the License Agreement contains a fee provision, Asher is not a party to the License Agreement; the only signatories to the License Agreement are the Debtor and W Licensing.

A non-signatory to a contract containing a fee provision can recover under that provision, if the non-signatory is sued on the contract as though he were a party to it, provided that the opposing party would be entitled to attorneys' fees had the opposing party prevailed. *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 128 (Cal. 1979).

Here, the Trustee sued Asher as though he were a party to the License Agreement. For example, the Trustee alleged that Asher had breached the License Agreement. The Trustee also named Asher as a defendant on her first claim for relief, which sought a declaration that the License Agreement was a void and unenforceable illusory contract, and that Asher did not have any rights against the Debtor thereunder. Pursuant to *Reynolds*, Asher is entitled to recover under the License Agreement's fee provision.

For these reasons, the Court recommends that the District Court allow Asher to recover his attorneys' fees as costs, in an amount to be determined by the District Court. The Court has not made a finding as to the reasonable amount of Asher's attorneys' fees since the Court cannot know in advance the amount of fees that Asher will incur in litigation before the District Court.

## III. Conclusion

Based upon the foregoing, the Court recommends that the District Court enter final judgment in this matter as follows:

1) On the first claim for relief as to W Licensing, enter declaratory judgment in favor of the Trustee, and against W Licensing, finding that W Licensing does not possess any interests attaching directly to the Sale Proceeds[15];
2) Dismiss the first claim for relief as to Asher based upon a lack of jurisdiction;
3) On the second claim for relief, enter summary judgment in favor of W Licensing[16];
4) On the third claim for relief, enter summary judgment in favor of W Licensing and Asher; and
5) Find that Asher, but no other party, is entitled to the allowance of reasonable attorneys' fees as costs pursuant to Cal. Civ. Proc. Code §§ 1021 and 1033.5(a)(10), in an amount to be determined by the District Court.

---

[14] The second claim for relief was brought only against W Licensing.
[15] Capitalized terms not defined in this introductory section are defined in the Final Ruling.
[16] The second claim for relief is brought only against W Licensing.

###

Date: May 26, 2023

Ernest M. Robles
United States Bankruptcy Judge